### CITY NAT. BANK OF SELMA v. DRESDNER BANK OF BREMEN.

(District Court, S. D. Alabama. January 28, 1919.)

No. 42.

1. WAR ⊜⇒10(2)—TRADING WITH ENEMY ACT—ACTION—DEBTOR—BANKS— DEPOSITS.

Within Trading With the Enemy Act, § 9 (Comp. St. 1918, § 3115½e), as to suit by one to whom a debt is owing by an enemy, a bank in which the proceeds of sale of a shipment of cotton were deposited for the benefit of the owner of the cotton when determined is debtor of complainant, to whom had been assigned the bill of lading, vesting it with the title to the cotton.

2. WAR ⊜⇒10(2)—PROTECTING RIGHTS OF ALIEN ENEMY.

Cause against an alien enemy for proceeds of shipment of cotton will be continued till peace is declared, German firms claiming it as owner of the cotton under bills of lading which complainant alleges were forged.

In Equity. Suit by the City National Bank of Selma against the Dresdner Bank of Bremen. On motion to dismiss bill. Motion overruled, and cause continued.

Pettus, Fuller & Lapsley, of Selma, Ala., for plaintiff.

Alexander D. Pitts, U. S. Dist. Atty., of Selma, Ala., for defendant.

ERVIN, District Judge. This matter comes on to be heard on a motion filed by the Alien Property Custodian and the Treasurer of the United States to dismiss the bill for want of equity.

The bill is filed under the provisions of section 9 of an "Act to define, regulate and punish trading with the enemy and for other purposes," commonly known as the "Trading with the Enemy Act (Act Oct. 6, 1917, c. 106, 40 Stat. 419 [Comp. St. 1918, § 3115½e]).

Section 9 of said act, when all its provisions not bearing upon the question here sought to be raised are eliminated, reads as follows:

"That any person, not an enemy, to whom any debt may be owing from an enemy whose property shall have been delivered or paid to the Alien Property Custodian and held by him or by the Treasurer of the United States, may file with said custodian a notice of his claim under oath; that said claimant, at any time before the expiration of six months after the war, may institute a suit in equity in a District Court of the United States for the district in which such person resides, or, if a corporation, where it has

its principal place of business, against the Alien Property Custodian or the Treasurer of the United States to establish the debt so claimed, and if suit shall be so instituted, then the money or the property of the enemy against whom such debt is claimed, shall be retained by the Alien Property Custodian or in the treasury of the United States until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment by the Alien. Property Custodian or Treasurer of the United States, on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated."

So far as I have been able to ascertain, there have been no constructions of this act by the courts, and it is therefore a question of first impression with me.

The contention is made that the provisions of the bill as filed do not bring it under the terms of this act, because it is contended that the bill fails to allege any debt owing plaintiff by the Dresdner Bank, whose assets are alleged to be in the custody of the Treasurer of the United States. and of the Alien Property Custodian. It therefore becomes necessary to consider the facts stated in the bill, which are briefly as follows:

That plaintiff is a corporation organized under the National Banking Laws of the United States, and has its principal place of business at Selma, Ala., within this district: that the Dresdner Bank is a corporation organized under the Imperial German Government, and is an alien enemy; that assets of said bank are now in the possession of the Alien Property Custodian and of the Treasurer of the United States, both of whom reside out of this District; that the amount involved in this suit, exclusive of interest and costs, exceeds the sum of $3,000; that plaintiff has filed with the Alien Property Custodian a notice of its claim, as provided for in section 9 of the "Trading with the Enemy Act," a copy of which claim is made an exhibit to the bill; that on June 30, 1910, plaintiff owned a lien to the extent of $80,000 on a large amount of cotton which formerly belonged to the bankrupt firm of Knight-Yancey & Co., who bought this cotton with money advanced by plaintiff in accordance with an agreement giving a lien; and, further, that said cotton was shipped to Bremen, Germany, by Knight-Yancey & Co., who took bills of lading from the Louisville & Nashville Railroad Company to their order, notify Cotton Commission Company, Bremen, Germany; that said bills provided for shipment over the railroad to Pensacola, Fla., thence by steamer to Bremen, Germany; that said bills of lading were then assigned and duly transferred and indorsed to plaintiffs by Knight-Yancey & Co.

The cotton was shipped from Selma, and before the time of its arrival in Bremen, Germany, Knight-Yancey & Co. failed, and were adjudicated bankrupts by the District Court for the Northern District of Alabama, and W. S. Lovell was appointed trustee of said firm, and that thereafter the said Lovell, as trustee, did, by an instrument in writing, transfer and assign to the complainant all of the right, title, interest, and claim of the said bankrupt estate to said cotton.

That upon the arrival of the cotton in Bremen, Germany, certain German firms, all of whom are alien enemies of the United States, and residing in Bremen, Germany, to wit, Knoop & Fabrius, C. A. Gruner

& Co., Gebr Fritzie & Co., claimed said cotton under forged bills of lading, alleged to have been issued by Knight-Yancey & Co., without authority of the Louisville & Nashville Railroad Company, or the steamship company on whose ship said cotton was shipped, and that said cotton was sold in Bremen, Germany, and the proceeds deposited in the branch of the Dresdner Bank at Bremen for the benefit of the owner of said cotton when determined.

[1] Do these allegations show that the Dresdner Bank is indebted to plaintiff?

"It is no longer an open question in this court, since the decision in the cases of Marine Bank v. Fulton Bank [2 Wall. 252, 17 L. Ed. 785], and of Thompson v. Riggs [5 Wall. 663, 18 L. Ed. 704], that the relation of banker and customer, in their pecuniary dealings, is that of debtor and creditor. It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lyndhurst, and Campbell, in the House of Lords, in the case of Foley v. Hill, and they all concurred in the opinion that the relation between a banker and a customer, who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not partake of a fiduciary character, and the great weight of American authority is to the same effect." Bank of the Republic v. Millard, 77 U. S. (10 Wall.) 155, 19 L. Ed. 897; Alston v. State, 92 Ala. 124, 9 South. 732, 13 L. R. A. 659; Batson v. Alexander State Bank, 179 Ala. 490, 60 South. 314.

Under the allegations of this bill, the assignment of the bills of lading to plaintiff vested plaintiff with the title to the cotton, and when this cotton was sold, and its proceeds deposited in the bank for the benefit of the owner of said cotton when determined, this money belonged to the owner, who could sue the bank under indebitatus assumpsit for it.

I am therefore of the opinion that the motion to dismiss should be denied.

[2] I do not feel, however, that I ought to go further at the present time in this case, because, while the allegations of the bill are that the German firms claimed the cotton under forged bills of lading, I cannot anticipate what the proof on this subject may be, and I should not undertake to pass upon the rights of these German firms until peace is declared between the United States and Germany, at which time they can come in and propound their claims and offer their testimony in support thereof. Kaiser Wilhelm, 246 Fed. 786, 159 C. C. A. 88, L. R. A. 1918C, 795; Watts, Watts & Co., Ltd., v. Unione Austriaca Di Navigazione, etc., 248 U. S 9, 39 Sup. Ct. 1, 63 L. Ed. ——.

An order will therefore be entered overruling the motion to dismiss the bill and continuing the cause during the continuance of a state of war between the United States and Germany, and a certified copy of this order will be served on A. Mitchell Palmer, as Alien Property Custodian, and on John Burke, as Treasurer of the United States, as the act requires them to hold the property of the alien enemy until the termination of this suit.