## Birkenheuer v. Birkenheuer

*John L. Du Bois*, for libellant.

KELLER, P. J., March 19, 1945.—On June 19, 1939, libellant, a native of Hungary and alien resident of the United States since 1913, instituted this action in divorce against his wife, Magdolna Birkenheuer, whose

last known residence was Temesvar, formerly a part of Hungary but now, since World War I, a part of Roumania, on the ground of desertion which is alleged to have occurred while libellant and respondent were residents of Temesvar. The sheriff having made a return of "non est inventus" as to the original subpœna, an alias subpœna was issued on August 3, 1943, and, subsequently, on September 11, 1943, a pluries subpœna and order of publication was allowed. No appearance having been entered on behalf of respondent, the matter was referred, on motion of libellant, to a master. The master, although unable to give notice to respondent, as required by the rules of court, nevertheless held a hearing, at which time testimony was taken in support of the libel. In his report, the master concluded that respondent had wilfully and maliciously deserted libellant while both were living in Hungary, and that libellant was entitled to a divorce. The master, however, recommended that no final decree be entered and that further proceedings be suspended until the termination of the war with Hungary and Roumania, or such time as will again permit communication with respondent, in order that she may be allowed to present a defense, if she so desires, and, in default of any defense by respondent, after due notice, that a final and absolute decree of divorce be then entered.

Exception was filed to that portion of the master's conclusion and recommendation that "service upon respondent by publication cannot be regarded as a legal service during a continuance of the war and, therefore, that the proceedings be stayed until the conclusion of peace and until such time thereafter as the court is satisfied that the proper notice of the pendency of the proceeding with the opportunity of respondent to contest the same be given her."

So far as we have been able to discover, there have been only two reported decisions in point in Pennsylvania. In the first of these, Devasil, etc., v. Diakov-

asilis, 46 D. & C. 255 (Lawrence Co.), the court ruled that the entire proceeding, in the interest of justice, should be stayed until such time as the state of war will permit communication with respondent in order that she may be allowed to present a defense if she so desires. In that case, as in the one before us, the question of service was paramount, there having been issued original and alias and pluries subpœnas, with advertisement. The court took judicial notice of the state of war and the impossibility of communicating with persons in the Italian territory, in which respondent was a resident, and held that in the interests of justice the case should not be proceeded with until it was possible to communicate with the defendant. In the other case, Jageler v. Jageler, 59 Montg. 164, the court held that service by publication was sufficient and that action could proceed notwithstanding respondent resided in an enemy or enemy-occupied country, which, in that case, was Germany. In support of its conclusion, the court held that service by publication is due process under the laws of Pennsylvania governing service of process in divorce action, citing Nixon v. Nixon, 329 Pa. 256, and that if this were not so we would be forced to refuse the divorce in every case where the master's notice under court rule was returned because, for some reason, it could not be delivered to the addressee; that the court granted many divorces under such circumstances without granting a stay until the letter could be delivered and certainly that greater consideration should not be given to a respondent, merely because she happens to be a resident of a country with which this country is at war. Although there is much to be said in favor of this argument, there is, nevertheless, a distinction between those cases, wherein respondent voluntarily makes her whereabouts unknown and incapable of location, and the case of an enemy alien who, through circumstances beyond her control, is barred from all means of com-

munication with persons residing in countries at war with the country of which she is a resident. As was said by the master, respondent in this case is as much under a disability as a minor or person non sui juris, in which cases the parties are always protected by the court, as is emphasized in the case of Rosenblum v. Rosenblum, 42 N. Y. Supp. (2d) 626, in which the court, in ruling that in an action for divorce service by publication pursuant to order gives the court full jurisdiction to fix the marital status or relation of plaintiff, says (p. 631) :

"It is obvious that under the present state of war, the notice of publication, even where copies are mailed to defendants in occupied countries, as well as where mailing is dispensed with, will not be received by such defendants. Mailing to the Secretary of the Treasury and the Alien Property Custodian where the action does not involve an alien defendant's property subject to seizure by the United States Government, proper as that procedure is in the state of war, clearly furnishes no notice to such defendants of the pending lawsuits and the remedy sought by judgment. Under the circumstances there is no opportunity permitted such defendants to defend themselves, such as would be provided by the courts were the defendants infants or incompetents, or by reason of habitual drunkenness or for any other reason mentally incapable of protecting their rights, although not judicially declared to be incompetent. Rule 44. But there can be no question that the defendant here, and those in the other types of action referred to, are utterly incapable, because of their plight, of defending themselves."

After all, as was said in Murray Oil Products Co., Inc., v. Mitsui & Co., Ltd., 33 N. Y. Supp. (2d) 92:

"Whether or not a stay shall be granted undoubtedly rests in the court's discretion in the sense that the court is to determine upon the facts of each particular case whether or not a stay is necessary, but the right to

defend an action brought against one is one of those fundamental rights inherent in our jurisprudence as well as in our conception of the very democracy for which we are fighting, and the opportunity for consultation between client and counsel is a part of that right, and the right must be accorded to alien enemies as well as to others. Watts, Watts & Co., Ltd., v. Unione Austriaca di Navigazione, 248 U. S. 9, 21, 22, 39 S. Ct. 1, 63 L. Ed. 100, 3 A.L.R. 323; The Kaiser Wilhelm II, 3 Cir., 246 F. 786, 789, 790, L.R.A. 1918C, 795; City Nat. Bank of Selma v. Dresdner Bank of Bremen, D.C., 255 F. 225, 227; Kintner v. Hoch-Frequenz, etc., Drahtlose Telegraphie, D. C., 256 F. 849. That the interests of some of our citizens may be prejudiced by halting the prosecution of a case during the war would not justify the court in failing to enforce the settled and established law. . . ."

Under the facts of this case and considering the many years that have elapsed between the time of the alleged desertion and the institution of this action and the unusual delays thereafter by libellant in prosecuting the same, we do not regard a further stay of the proceedings a hardship and we, therefore, agree with the master and adopt his recommendation that the action be suspended and further proceedings thereon be stayed until such time as the state of war between the United States and Hungary and Roumania will again permit communication with respondent in order that she may be allowed to present a defense, if she so desires.

### Order

And now, to wit, March 19, 1945, this case is continued generally and it is ordered and directed that further proceedings therein be suspended until such time as peace shall have been concluded with Hungary and Roumania or until it will be possible to communicate with respondent and to allow her to present her defense to this action, if she so desires.