**UNITED STATES v. TOMICICH et al.**

No. 8982.

District Court, E. D. Pennsylvania.

Sept. 25, 1941.

Gerald A. Gleeson, U. S. Atty., and Barton W. Rettew, Asst. U. S. Atty., both of Philadelphia, Pa., for the Government.

Homer L. Lewis, of New York City, and Paul W. Knox, of Philadelphia, Pa., for defendants.

GOODRICH, Circuit Judge.

The defendants' motion for a new trial in this case raises questions concerning the application of Section 502, 18 U.S.C.A. At this stage of the matter, at any rate, no complaint is made of the conduct of the trial except in so far as the trial court failed to adopt the defendants' point of view with regard to this statute. The first point made is that the vessel was not engaged in foreign commerce at the time of the acts alleged in the indictment. The catch line heading of Section 502 is entitled "Injuring vessels engaged in foreign commerce". But the language which follows in the section, which defines punishable conduct and provides a penalty therefor, does not require that the vessel be in foreign commerce at the time of the doing of the acts defined.

It may be conceded that if the Belvedere was required to be engaged in foreign commerce at the time of the offenses alleged here, the problem presented would involve some difficulty. The Belvedere had come from across the sea, but at the time the injury complained of was done to her she was tied up at a dock at Tacony where she had been for a considerable time. She was not ready to move under her own power and it would have taken an appreciable time to get her ready to move. To decide whether a ship under these circumstances is in "foreign commerce" within the definition of that concept given in early cases dealing with the state's right to tax, etc., would be very troublesome.

In the court's view that question does not have to be met. The sole question is whether the words used in the catch line for the section heading, and which do not of themselves make a complete sentence, shall limit the mandatory effect of the unqualified words used in the text of the section itself. Even with regard to the title of an act the authorities are clear that it is not to be looked to to change plain meaning of words used by the enacting power. And a title to a general statute would seem to be more important than the mere heading of a section. Thus the court says in Ozawa v. United States, 1922, 260 U.S. 178, 193, 43 S.Ct. 65, 67, 67 L.Ed. 199: "The division of the Revised Statutes into titles and chapters is chiefly a matter of convenience, and reference to a given title or chapter is simply a ready method of identifying the particular provisions * * *". In Securities and Exchange Commission v. Timetrust, Inc., D.C., 1939 28 F. Supp. 34, 41, the court said: "It is only in cases where the language of a statute is ambiguous that the title may be resorted to in resolving doubts." Black, Construction and Interpretation of the Laws, 2d Ed. 1911, 247, 248 states " * * * the title of a statute cannot be used to extend or to restrain any of the provisions contained in the body of the act * * *".

The second point is that present Section 502 and present Section 193, Title 50 are all part of the Espionage Act of June 15, 1917, and that present Section 502 followed

in that act what is now Section 193, Title 50. Section 193 makes unlawful certain conduct on the part of the owner or master or crew of a vessel or any other person to do certain things, among which are wilfully to cause the injury of such vessel. The argument is that the two sections should be construed together and that Section 502 does not apply to officers or crew of the ship acting on behalf of the owner.

■ There is force in the argument that since these sections were in the same statute as originally passed, they should be looked at together when the question of the application of one of them arises. But when looked at together it will be seen that the conduct forbidden and the penalty in each of them while similar is not identical. Section 193 further penalizes knowingly permitting the vessel to be used for conspiracy or to defraud the United States and makes elaborate provision about seizure, none of which is in 502. The all inclusive word "whoever" used in 502 cannot be taken to exclude master and crew of a ship on which the alleged offense is committed even though there is some overlapping in the description of conduct forbidden in each of the two sections.

The argument of error in refusing defendants' ninth, thirteenth, twenty-second and twenty-third points for charge is met, in the court's opinion, by referring to the rather elaborate effort made to deal with intentional conduct in the instructions to the jury both in the original charge and in the additional instructions given during the course of the jury's deliberation.[1]

The next point made is that the court erred in not limiting the question of injury or danger to the safety of the vessel to the time and place where the defendants' acts were done.

■ Considerable stress is laid upon the use of the word "tamper" in the statute and charged in the indictment and the argument is made that it signifies an act of meddling or interfering with something by a person who does not have the right or authority over the object interfered with. The suggested conclusion would be that the officers and crew of a ship would thus be excluded from the term because of their right to be on the vessel and to handle its machinery and equipment. Reference to the new edition of Webster's International Dictionary, however, does not bear out such a narrow definition of the word. Among the definitions there given of "tamper" are found "to meddle so as to alter a thing; especially to make corrupting or perverting changes; as, to tamper with a document or a text; to interfere improperly". Again, another use is "to meddle; to busy oneself rashly; to try trifling or foolish experiments;—". The use of the term "tamper" thus falls within one or more accepted meanings of the word none of which limits it as the argument suggests.

■ This position, asserting that the jury's attention should have been limited to the question of the ship's safety at Tacony, asks the court to ignore the phrase in the statute "whether the injury or danger is so intended to take place within the jurisdiction of the United States, or after the vessel shall have departed therefrom * * *". This broad provision may or may not have been occasioned, in the first instance, by the placing of time-bombs in ships in United States harbors during the last war. In any event, the language is certainly not so limited, and it is placed in the statute following all the enumeration of forbidden acts. For the court to ignore it or limit it would be to depart from the words of the statute.

The last argument made, with regard to objections to additional instructions given the jury is, in the court's opinion, integrated with the proposition just discussed. An endeavor was made to make the additional charge and the instructions initially given consistent. If the latter represents the correct view of the statute the additional instructions do also.

■ While the statute may not be a perfect piece of legislative drafting it is understandable and capable of being applied. The court thinks it was applied correctly.

Through the courtesy of counsel a copy of the opinion of Judge Paul from the Eastern District of Virginia, bearing date of September 10, 1941, in the case of United States of America v. Saglietto et al., D.C., 41 F.Supp. 21, has been furnished the court. Judge Paul's opinion has been

---

[1] See pp. 387, 388 of the transcript of the record. Further emphasis appears in the court's repetition of the statute at pp. 381–384, 386. In granting several of defendants' points for charge (pp. 390, 391–393) still more treatment of the point was had.

carefully examined. Many of the facts run parallel with those in the instant case, but the attention of the court was seemingly directed upon a different legal issue.

The motion for a new trial is, therefore, overruled.

