**BERSIO et al. v. UNITED STATES.**

**PIERACCINI et al. v. SAME.**

**SCHIAFFINO et al. v. SAME.**

Nos. 4824, 4842, 4843.

Circuit Court of Appeals, Fourth Circuit.

Dec. 26, 1941.

Homer L. Loomis, of New York City (Irvin B. Tucker, of Whiteville, N. C., and Isaac C. Wright, of Wilmington, N. C., on the brief in No. 4824; Charles Ruzicka, Hilary W. Gans, and Joseph T. Brennan, 2d, all of Baltimore, Md., on the brief in Nos. 4842 and 4843), for appellants.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for appellee in Nos. 4842 and 4843.

Charles F. Rouse, Asst. U. S. Atty., of Kinston, N. C. (J. O. Carr, U. S. Atty., of Wilmington, N. C., and Chauncey H. Leggett, Asst. U. S. Atty, of Tarboro, N. C., on the brief), for appellee in No. 4824.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

These are appeals from convictions and sentences for violating section 1, title III of the Act of June 15, 1917, 40 Stat. 217, 221, 18 U.S.C.A. § 502. The defendants are officers and members of the crew of the Italian vessels Pietro Campanella and Euro, lying in Baltimore harbor, and the Villarperosa, lying in the port of Wilmington, N. C. The evidence against them establishes that, on orders from the Naval Attache of the Italian Embassy at Washington, they proceeded to destroy the motive power of the vessels by inflicting damage of various sorts upon their engines, motors, pumps and other machinery. Their defense was that this was done not with any intent to impair the safety of the vessels, but with the consent of their owners to immobilize them and to prevent their use by an enemy nation.

The statute under which the indictments were found is entitled "An Act To punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes". Section 1 of title III thereof, 18 U.S.C.A. § 502, is as follows:

"Title III.

"Injuring Vessels Engaged In Foreign Commerce.

"Section 1. Whoever shall set fire to any vessel of foreign registry, or any vessel of American registry entitled to engage in commerce with foreign nations, or to any vessel of the United States as defined in section three hundred and ten of the Act of March fourth, nineteen hundred and nine, entitled 'An Act to codify, revise, and amend the penal laws of the United States,' or to the cargo of the same, or shall tamper with the motive power or instrumentalities of navigation of such vessel, or shall place bombs or explosives in or upon such vessel, or shall do any other act to or upon such vessel while within the jurisdiction of the United States, or, if such vessel is of American registry, while she is on the high sea, with intent to injure or endanger the safety of the vessel, or of her cargo, or of persons on board, whether the injury or danger is so intended to take place within the jurisdiction of the United States, or after the vessel shall have departed therefrom; or whoever shall attempt or conspire to do any such acts with such intent, shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

The defendants make four contentions: (1) That the statute has no application to the acts committed by the defendants; (2) that the bills of indictment are insufficient in that they do not allege the ownership of the vessels; (3) that the evidence is insufficient in that it fails to show criminal intent and particularly the intent required by the statute; and (4) that, if construed to cover the acts of the defendants, the statute would be violative of the due process clause of the Fifth Amendment. We find no merit in any of these contentions.

On the first point, it is clear, we think, that one of the purposes of the statute was to forbid and punish just such conduct as that in which the defendants engaged. The statute was passed in June 1917, shortly after our entry into the World War, and was designed to protect the foreign commerce of the country and vessels usable as instrumentalities of that commerce, as well as to punish espionage and other crimes particularly harmful to the country in time of war. Title II, 50 U.S.C.A. §§ 191–194, deals primarily with control over vessels in ports of the United States, and Title III with injuries to vessels engaged in foreign commerce. While there is some overlapping of the two sections, it is perfectly clear that section 1 of title III, quoted above, applies to any person who shall tamper with the motive power of any "vessel of foreign registry", or any vessel of American registry entitled to engage in foreign commerce "with intent to injure or endanger the safety of the vessel or her cargo * * *, whether the injury or danger is so intended to take place within the jurisdiction of the United States, or after the vessel shall have departed therefrom."

It is argued that the heading of the section shows it was intended to apply only to vessels engaged in foreign commerce, and that, since the vessels were tied up at piers because of the war, they were not engaged in such commerce. A vessel of foreign registry, however, which has come into a port of the United States for the purpose of carrying on commerce with foreign countries is a vessel engaged in foreign

commerce within any fair meaning of that language; and, even if this were not true, it should be noted that the language of the section protects vessels of "foreign registry", without reference to whether they are engaged in foreign commerce or not. There is no ambiguity in the language used in the body of the statute in describing the vessels protected by it; and it is well settled that the heading of a statute, or section thereof, may not be used to create an ambiguity or to extend or restrict the language contained in the body of the statute itself. United States v. Tomicich, D. C., 41 F.Supp. 33.

■ And we see no force in the argument that the section is not applicable because the acts done were by the officers and crews and with the consent of the owners of the vessels. The purpose of the section was, not to protect the owners of vessels against the malicious acts of others, but to protect the vessels themselves, as instrumentalities usable in the vital foreign commerce of the country, from destruction or injury by anyone. Fresh in the mind of Congress must have been the acts of the crews of German vessels in American ports, who, shortly prior to the passage of the act, had been guilty of dismantling the machinery of the vessels and doing other acts to render them practically worthless. Wierse v. United States, 4 Cir., 252 F. 435, 441. And the language used was broad enough to include the owners, officers and crews of such vessels as well as other persons, the all-inclusive "whoever" being employed for this purpose. It is argued that the use of the word "tamper" shows that intermeddling by someone having no right or authority over the motive power or machinery was contemplated, but we do not think so. As used in the statute it means, we think, any sort of improper interference with the machinery, which is denounced as criminal only if accompanied by the described intent. See 60 C.J. 1213; Webster's New International Dictionary, 2d Ed.; United States v. Tomicich supra; Keefe v. Donnell, 92 Me. 151, 42 A. 345.

■ What we have said disposes of the second contention, to the effect that the bills of indictment were insufficient in not alleging the ownership of the vessels. As the acts denounced by the statute were not crimes because committed against the owners of the vessels but because of the injury to instrumentalities of foreign commerce, it was not necessary to allege ownership. The decisions relied on by appellants, relating to charges of larceny and malicious injury to personal property at common law, manifestly have no application. Where the statute sets forth the ingredients of the offense, an indictment in the words of the statute is sufficient. Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162. It is sufficient if it contains the elements of the offense intended to be charged, sufficiently apprises the defendant of what he must be prepared to meet, and sets forth the charge with sufficient accuracy to protect him against further prosecution for the same offense. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Martin v. United States, 4 Cir., 299 F. 287; Center v. United States, 4 Cir., 96 F.2d 127.

■ The third contention of appellants is (1) that there was no evidence of malice or intent to commit a wrong on their part, and (2) that there was no evidence of the specific intent required by the statute. No discussion is necessary as to the first of these propositions. If the defendants did the acts forbidden by the statute with the prescribed specific intent, it is elementary that no further showing of malice or intent to commit a wrong is required. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604; Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 69, 70, 30 S.Ct. 663, 54 L.Ed. 930. The question then comes down to this: Was the evidence sufficient to establish intent "to injure or endanger the safety of the vessel"? We think that it was. In this connection, we think it clear that the language of the statute is properly interpreted as requiring intent to injure the vessel or endanger her safety; for no one speaks of injuring the safety of an object. Such interpretation is seen to be manifestly correct if the words, "or endanger the safety of", be set off by commas; and the subsequent phrase of the section, "whether the injury or danger is so intended to take place within the jurisdiction of the United States, or after the vessel shall have departed therefrom", shows clearly that what was contemplated as embraced within the prescribed intent was injury itself as well as danger or the impairment of safety. Whether the language be so interpreted, however, or be interpreted as requiring intent to "injure the safety" of the vessel, we think that there was ample evidence showing the requisite intent. Injury to the machinery necessary to the operation of the vessel is certainly injury to the vessel it-

self; and the machinery could not be destroyed or damaged to such an extent as not to be usable without impairing or "injuring" the safety of the vessel as an instrumentality of commerce.

It is argued that, as the vessels were tied up in port, their safety was not "injured" by acts which merely immobilized their machinery, and that no intent to inflict such "injury" can be inferred from these acts. It is manifest, however, that a destruction of machinery which rendered the vessels unable to move themselves impaired to some extent their safety, even when tied up at the pier. But it is not alone with respect to their safety at the pier that the destruction of machinery is to be viewed. Vessels are intended to plow the seas, not to rot at the dock; and any destruction of machinery which renders it dangerous for them to perform their essential function may properly be said to be one which impairs or endangers their safety. We have carefully considered Judge Paul's opinion to the contrary in United States v. Saglietto, D.C., 41 F.Supp. 21, but we are not convinced by it. We think that it does not give sufficient scope to the phrase of the section "whether the injury or danger is so intended to take place within the jurisdiction of the United States, or after the vessel shall have departed therefrom." As said by Judge Goodrich in United States v. Tomicich, supra [41 F.Supp. 35]: "The next point made is that the court erred in not limiting the question of injury or danger to the safety of the vessel to the time and place where the defendants' acts were done. * * * This position, asserting that the jury's attention should have been limited to the question of the ship's safety at Tacony, asks the court to ignore the phrase in the statute 'whether the injury or danger is so intended to take place within the jurisdiction of the United States, or after the vessel shall have departed therefrom * * *'. This broad provision may or may not have been occasioned, in the first instance, by the placing of time-bombs in ships in United States harbors during the last war. In any event, the language is certainly not so limited, and it is placed in the statute following all the enumeration of forbidden acts. For the court to ignore it or limit it would be to depart from the words of the statute."

Little need be said as to the fourth contention. Counsel for appellants argue that there is an absence of standards by which the limits of what is permitted and what is forbidden may be determined; but this argument is purely fanciful. What is forbidden, so far as the applicable language of the statute is concerned, is any tampering with the machinery of a vessel of foreign registry or engaged in foreign commerce with intent to injure the vessel or impair her safety. As we have seen, the "tampering" of the statute embraces the idea of improper interference, and when to this is added the element of intent to injure the vessel or impair her safety, a standard is prescribed which there is no difficulty in anyone's understanding. "The Act, plainly, meets the essential requirement of due process that a penal statute be 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties,' and be couched in terms that are not 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L. Ed. 322." Whitney v. California, 274 U.S. 357, 368, 47 S.Ct. 641, 645, 71 L.Ed. 1095.

There was no error in any of the cases, and the judgments appealed from will be affirmed.

Affirmed.