## CLEMONS v. UNITED STATES.
### No. 5094.

Circuit Court of Appeals, Fourth Circuit.

Aug. 12, 1943.

DOBIE, Circuit Judge.

Leroy Clemons (hereinafter called Clemons) was tried in the United States District Court for the District of Maryland under an indictment on two counts, charging violations of 18 U.S.C.A. § 455. Upon a plea of not guilty, Clemons was found guilty by a jury on both counts of the indictment, and was sentenced by the court to imprisonment for four years.

The indictment was as follows:

"First Count: 'The Grand Inquest of the United States of America in and for the District of Maryland, inquiring for the body of said District, do on their oath present that Leroy Clemons, late of said District, heretofore, to wit, on or about the 23rd day of December, 1942, at the Fighter Command Station, Camp Springs, Prince George's County, in the State and District of Maryland, and within the jurisdiction of this Court, did knowingly, wilfully and unlawfully wound another, to wit, Alton Nelson, by shooting the said Alton Nelson in the arm with a dangerous weapon, to wit, a pistol; contrary to the form of the statute in such case made and provided, and against the peace, government and dignity of the United States';

"Second Count: 'And the Grand Inquest aforesaid, upon their oath aforesaid, do further present that the said Leroy Clemons, late of said district, heretofore, to wit, on or about the 23rd day of December, 1942, at the Fighter Command Station, Camp Springs, Prince George's County, in the State and District of Maryland, and within the jurisdiction of this Court, did knowingly, wilfully and unlawfully assault another, to wit, Alton Nelson, by shooting the said Alton Nelson in the arm with a dangerous weapon, to wit, a pistol; contrary to the form of the statute in such case made and provided, and against the peace, government and dignity of the United States.' "

The statute involved reads thus:

"U.S.C.A., Title 18, Sec. 455 (Criminal Code, section 276) Felonious assaults; to murder or rape; other felony; with weapons; beating; simple assault.

"Whoever shall assault another with intent to commit murder, or rape, shall be imprisoned not more than twenty years. Whoever shall assault another with intent to commit any felony, except murder, or rape, shall be fined not more than $3,000, or imprisoned not more than ten years, or both. Whoever, with intent to do bodily

Joseph Burke, of Baltimore, Md. (Joseph Rosenthal, of Baltimore, Md., on the brief), for appellant.

K. Thomas Everngan, Asst. U. S. Atty., of Baltimore, Md. (Bernard J. Flynn, U. S. Atty., of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

harm, and without just cause or excuse, shall assault another with a dangerous weapon, instrument, or other thing, shall be fined not more than $1,000, or imprisoned not more than five years, or both. Whoever shall unlawfully strike, beat, or wound another, shall be fined not more than $500, or imprisoned not more than six months, or both. Whoever shall unlawfully assault another, shall be fined not more than $300, or imprisoned not more than three months, or both. (R.S. § 5346; Mar. 4, 1909, c. 321, § 276, 35 Stat. 1143.)"

Two questions are presented upon this appeal for our determination. The first contention of Clemons is thus stated by Judge Coleman: "(1) That the first count of the indictment is brought under the fourth sentence of Section 455 of Title 18 of the United States Code Annotated, which limits punishment thereunder to a fine of not more than $500.00 or imprisonment of not more than six months, or both; and (2) that the second count of the indictment is brought under the fifth or last sentence of Section 455 of Title 18 of the United States Code Annotated, for violation of which a fine of not more than $300.-00 or imprisonment for not more than three months, or both, can be imposed; and that, therefore, since the defendant, following his conviction, has been sentenced by this Court to serve a term of four years, such sentence by this Court to serve is in excess of any sentence permitted by the statute and therefore invalid."

The second question involves the assurance of the Assistant District Attorney to Clemons that the indictment had been drawn only under the misdemeanor provisions of the criminal statute.

█ Under the first question, we certainly cannot commend the draftsmanship of the indictment. Hardly could this indictment be recommended for inclusion in a model form-book. And assuredly we do not wish to put the stamp of appellate approval upon the practice, herein employed, of departing, in an indictment, from the clear language of the statute and of using, in lieu thereof, words with meanings that are notoriously slippery and indefinite. However, we agree with the District Judge that the indictment, in spite of its verbal imperfections, was legally sufficient to charge a felonious assault under the criminal statute. As the District Judge said: "The failure to employ the precise words of the statute is cured by the use of words that are synonymous with it in both their legal and their ordinary meaning." In United States v. National Retail Lumber Co., D.C., 40 F. Supp. 448, 455, it was said: "We refuse to admit the magic of any particular words as necessary to the validity of an indictment."

█ As Judge Parker declared in Bersio v. United States, 4 Cir., 124 F.2d 310, 314: "It is sufficient if it contains the elements of the offense intended to be charged, sufficiently apprises the defendant of what he must be prepared to meet, and sets forth the charge with sufficient accuracy to protect him against further prosecution for the same offense." And Judge Rose stated, in Martin v. United States, 4 Cir., 299 F. 287, 288: "The sufficiency of a criminal pleading should be determined by practical, as distinguished from purely technical, considerations. Does it, under all the circumstances of the case, tell the defendant all that he needs to know for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If so, it should be held good." See, also, Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Miller v. United States, 3 Cir., 50 F.2d 505, 508; Center v. United States, 4 Cir., 96 F.2d 127; Tatum v. United States, 71 App.D.C. 393, 110 F.2d 555; and Nye v. United States, 4 Cir., 137 F.2d 73, decided by this Court July 22, 1943.

Important, too, in this connection is 18 U.S.C.A. § 556: "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

In the light of these decisions and this statute, we do not deem it necessary to add further to the discussion of this point in the opinion of the judge below. His ruling here, we think, constitutes no ground for a reversal.

More difficult and less free from doubt is the second question. It is admitted that, before the trial, the Assistant District Attorney, in charge of the prosecution, assured Clemons that the indictment was intended to be drawn solely under the misdemeanor provisions of the statute. On this point Judge Coleman, in his opinion, had this to say: "In the present case, there is no claim

or inference that the United States Attorney in charge of the prosecution had any intention to usurp the functions of the trial court in so far as promising or forecasting what sentence the Court might impose upon defendant, in the event of his conviction. Nevertheless, it is appropriate to point out that the trial court is not to be bound by any pre-trial representations made by a prosecuting officer with respect to the scope of an indictment or possible sentences thereunder, even though made in entire good faith, and solely through inadvertence. In the present case, had the defendant plead guilty, and had it been shown that there was ground for saying that such plea had been induced, or was in some degree affected by statements of the Assistant United States Attorney with respect to his interpretation of the indictment, the Court might view the case in a different aspect." In the brief of the United States, we find: "The defendant was not prejudiced thereby as he pleaded not guilty and his defense was not self-defense but mistaken identity." To this statement we cannot agree.

■ It is true, as Judge Coleman observes, that "the trial court is not to be bound by any pre-trial representations made by a prosecuting officer with respect to the scope of an indictment or possible sentences thereunder." In the ordinary course of events, however, the judge will normally approve such arrangements. The United States District Attorney, and his duly appointed assistants, are charged with heavy responsibilities in the prosecution of criminal offenses against the United States. They possess large powers commensurate with the discharge of these responsibilities. Indeed, the District Attorney is practically paramount until the beginning of the trial, when usually the judge first appears in the picture.

■ In Deutsch v. Aderhold, 5 Cir., 80 F.2d 677, 678, Judge Foster crisply stated: "The United States attorney of the district where a violation of a federal statute occurs is charged with the duty of prosecution and vested with complete control over the proceedings, in the exercise of sound discretion. If the facts show a violation of two or more statutes, he may elect under which he will prosecute, in the absence of a prohibitory statute. He is not bound by any action of the arresting officer or a United States commissioner, acting as a committing magistrate under the provisions of Rev. Stat. 1014, as amended (18 U.S.C.A. § 591). He may ignore the proceedings before the United States commissioner entirely. R.S. § 771 (28 U.S.C.A. § 485); Confiscation Cases, 7 Wall. 454, 19 L.Ed. 196; Morse v. United States, 267 U.S. 80–85, 45 S.Ct. 209, 69 L.Ed. 522." See, also, the opinion of Judge Northcott in Paris v. United States, 4 Cir., 137 F.2d 300, decided by this Court July 28, 1943; and the strong language used by Judge Bourquin, in United States v. Woody, D.C., 2 F.2d 262.

It follows that dealings between one charged with a federal crime and the United States District Attorney are often of the utmost importance in determining whether one so charged has been dealt with fairly and has been given such treatment as accords with the Anglo-Saxon ideals of fair play and the more precise guarantees under the Due Process Clause of the Constitution of the United States, Amendment 5.

Here, the Assistant United States District Attorney gave Clemons what he might reasonably interpret as a definite assurance that he would be prosecuted only for a misdemeanor and that he need fear no punishment beyond that fixed in the statute for a misdemeanor. He was, under an indictment that is far from crystal clear, sentenced by the judge to imprisonment for four years—a sentence proper only under the felony provisions of the statute.

We cannot clearly and surely assume what course of conduct would have been adopted by Clemons and his counsel had they not relied on the statement of the Assistant District Attorney. Perhaps, without this assurance and with a possible felony charge and punishment therefor before him, Clemons might have been willing to plead guilty to a misdemeanor charge, and this might have been accepted by the court. Perhaps, without this assurance, Clemons and his counsel might have used much greater diligence in preparation for trial and might have employed equally different tactics during the course of the trial itself. We cannot be sure just what would have been the course of events.

It may well be that Clemons and his counsel acted a bit precipitately in accepting this assurance at its face value and in proceeding accordingly. It does not follow that they, therefore, acted altogether unreasonably. Certainly the whole procedure smacks of surprise, which should if possible be avoided.

A criminal trial is not, of course, to be likened to a game. It is an inquiry into truth in order that justice may be done. A trial, however, must be fair; and one of the requisites of a fair trial is that the accused be fairly advised of the nature of the offense for which he is being tried. He may not be tried for one offense and be convicted of another; but this is in substance what happens when he is assured by the prosecuting attorney and understands that he is being prosecuted for a misdemeanor under an indictment, which is interpreted for the first time after conviction to charge a felony.

We think, accordingly, that Clemons, under the circumstances of this case, was deprived of his liberty against the spirit, if not the letter, of the Due Process Clause of the Constitution of the United States. We think he has been dealt with unfairly in the light of our standards of justice towards those accused of federal crimes—standards, in our opinion, which the courts must always adequately safeguard and must, under all circumstances, zealously protect.

The judgment of the District Court is reversed, and the case is remanded to the court for further proceedings consistent with this opinion.

Reversed and remanded.