## THE PIETRO CAMPANELLA.
## THE EURO.
### Nos. 2498, 2499.

District Court, D. Maryland.
Oct. 13, 1942.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., and H. B. Finn, Sp. Asst. to Atty. Gen., of Washington, D. C., for the Government.

Albert Parker, of Washington, D. C., for Alien Property Custodian.

Homer L. Loomis, of New York City, and Hilary W. Gans, of Baltimore, Md., for claimants.

CHESNUT, District Judge.

The present war with Italy has led to another unusual situation with respect to the possession, ownership, title and legal interest in the two Italian cargo ships involved in the above entitled cases. The present Alien Property Custodian has now filed a petition praying to be *substituted* for the prior owners of the ships who are the "claimants" of the ships in these admiralty cases instituted by the United States for their forfeiture. The extent and scope of the prayer for substitution, and the expressed purpose thereof, is to make the Alien Property Custodian *dominus litis* for all purposes of the case to the *exclusion* of further participation therein by the claimants. One effect of the order if granted would be to permit the Alien Property Custodian, if he so elects, to consent to a decree of forfeiture in favor of the United States. The claimants by counsel have answered the petitions strenuously opposing an order which would in effect preclude them from further *contesting* the claim of the United States for *forfeiture*. The claimants also by petitions pray for the *suspension* of further proceedings in the case for the duration of the war in order that they may have fuller opportunity to contest the claim for forfeiture. Counsel for the parties have been heard on these opposing motions.

Proper consideration of the conflicting contentions requires a brief review of the prior proceedings in these cases. In March 1941 the motive power of the two ships, then lying at anchor in the Port of Baltimore, was intentionally injured or destroyed by the masters and crew of the ships under orders from the Naval Attache of the Italian Embassy to this country. For these acts the master and certain members of the crew of each ship were indicted, tried and convicted in this court under 18 U.S.C.A. § 502, and the judgments were affirmed by the Circuit Court of Appeals for the Fourth Circuit and certiorari denied by the Supreme Court. Bersio v. United States, 4th Cir., 124 F.2d 310; Id., 316 U.S. 665, 62 S.Ct. 1033, 86 L.Ed. 1742. Similar cases arose and were decided in other districts. Marchese v. United States, 5th Cir., 126 F.2d 671; United States v. Tomicich, D.C., 41 F.Supp. 33; United States v. Saglietto, D.C., 41 F.Supp. 21; United States v. Martini, D.C., 42 F. Supp. 502.

On July 19, 1941 the United States filed libels against both ships for the forfeiture thereof by reason of the said wilful damage, under 50 U.S.C.A. § 193. On August 14, 1941 claim for the Pietro Campanella was filed on behalf of Societa Navigazione Tito Campanella, Genoa, Italy, and for the Euro on behalf of Societa Navigazione Ligure di Armemento of Genoa, Italy.

On September 9, 1941 the United States Maritime Commission requisitioned the *use* (not the full ownership) of said vessels under the authority of the Act of Congress of June 6, 1941, Pub.Law, 101, 77th Congress, c. 174, 55 Stat. 242, 46 U.S.C.A. note preceding section 1101. Thereafter on October 6, 1941 the United States petitioned the court for an order directing the marshal of the court and the Collector of Customs to comply with the notice of said requisition by delivering the possession of the ships to the Maritime Commission without prejudice, however, to the government's claim for forfeiture, "this court retaining its custody and jurisdiction in all respects of said vessel in each of such proceedings". This petition was opposed by the respective claimants of the vessels and after hearing the court granted an order substantially in accordance with the prayers of the petition but with further clarification, D.C., 41 F.Supp. 656, where the applicable provisions of the Act of June 6, 1941 were reviewed. The important point therein to be here noted is the provision of the Act with respect to the determination of just compensation for the use of the ships or damage for injuries thereto during use by the government. The amount of such just compensation has not yet been determined. On April 7, 1942, after hearing, exceptions of the claimants to the amended libels for forfeiture were overruled. D.C., 44 F. Supp. 348. In the meantime, in December, 1941, war was declared between Italy and this country.

Prior proceedings in both cases have been identical with, however, the important exception that in the case of the Pietro Campanella there was an intervening petition filed by Dichman, Wright & Pugh, Inc., based on a suit filed in this court against the ship on May 14, 1941 by writ of foreign attachment to secure the payment of an alleged debt due from the owners of the ship. On July 30, 1942 the pe-

titions of the Alien Property Custodian above referred to were filed in both cases; and on August 19, 1942 the motion of counsel for claimants for a stay of proceedings was filed. On October 1st last, counsel for the claimants filed petitions for the allowance of fees to be paid from the property involved in these cases to which their clients may be respectively entitled.

The petitions of the Alien Property Custodian after reciting the prior procedure in the case, allege that upon the declaration of a state of war between the United States and the government of Italy, claimants became and have continued to be enemies as defined in section 2 of the Trading with the Enemy Act of October 6, 1917 as amended, 50 U.S.C.A.Appendix, § 2, "not holding a license from the President; and all the right, title and interest, if any, of the claimant in said vessel became and ever since have continued to be the property of a National of a foreign country designated on Executive Order No. 8389 as amended [12 U.S.C.A. § 95 note]"; that on July 22, 1942 the Alien Property Custodian, in consequence of his vesting order No. 52 (7 Fed.Reg. 5738) declared vested in himself all right, title and interest, *if any*, of the claimants in said vessels in the interest of and for the benefit of the United States; and that by virtue thereof "there has been effected a complete substitution of petitioner for the claimant in respect of such right, title or interest, if any, as the claimant may have had in said vessels, and petitioner is entitled to be substituted as a party herein in place and stead of the claimant".

The prayers of the petition are "(1) for an order substituting petitioner in all respects as a party herein in the place and stead of the claimant; (2) that all claims, pleadings, motions or exceptions heretofore filed herein on behalf of the claimant be dismissed, denied and overruled as to the claimant, but without prejudice as to petitioner; that the claimant be adjudged without any right, title or interest in said vessel and that such right, title and interest, if any, as the claimant may have had therein prior to said vesting order be adjudged vested in petitioner; and that all claims, pleadings, motions or exceptions heretofore filed herein on behalf of the claimant be ordered to stand of record for the benefit of petitioner, pending an opportunity to petitioner to amend, supplement or withdraw the same as petitioner may be advised; (3) that leave so to amend, supplement or withdraw the same be granted to petitioner, as well as leave to file such other claims, pleadings, motions or exceptions as petitioner may be advised."

A copy of the vesting order was filed as an exhibit with the petitions. It recites that the order is made under the authority of the Trading with the Enemy Act of October 6, 1917, particularly sections 5(b) and 7(c), as amended, 50 U.S.C.A.Appendix §§ 5(b), 7(c) and of Executive Order No. 9095 of March 11, 1942 as amended, 50 U.S.C.A.Appendix § 6 note (7 Fed.Reg. No. 1971); and that the Custodian hereby "demands and seizes, and declares vested in the Alien Property Custodian, forthwith and upon the terms herein provided, all right, title and interest, if any, of claimants, and each of them, in any or all of the aforesaid vessels (as hereinafter defined), to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States". The order further states that the term "vessels" as used in the order "includes any claim against the United States for compensation for anything heretofore or hereafter done under the Act of June 6, 1941 (Pub.Law, 101, 77th Congress) in respect of said vessels. The order further provides that:

"The divesting and seizure hereunder of all right, title and interest of Claimants, and each of them, and the vesting thereof in the Alien Property Custodian is unconditional and without redress or right of compensation to said Claimants, or any of them, except as may be otherwise provided by future legislation. Nothing in this order shall be construed as impairing the right of compensation in accordance with the applicable provisions of the Act of June 6, 1941, and of section 902 of the Merchant Marine Act of 1936 as amended, [46 U.S.C.A. § 1242] of any person interested except Claimants, and each of them; and except other enemies; but nothing in this order shall be construed as impairing such rights as the United States may already have in respect of said vessels, including specifically but not exclusively rights of forfeiture and salvage rights, whether or not already established by adjudication. Nothing in this order shall be construed as recognizing any right of compensation for any interests found subject

to defeasance or without value by reason of the paramount rights of the United States.

"Nothing in this order shall be construed as impairing any authority which the United States Maritime Commission or the War Shipping Administration may have to take any action in respect of said vessels which the Act of June 6, 1941, or Executive Order No. 8771, or any amendment thereof, heretofore or hereafter made, authorizes with respect to vessels taken under the Act of June 6, 1941, or to continue, modify or revoke any arrangements heretofore made by them in respect of said vessels.

"Nothing in this order shall be construed as recognizing that Claimants, or any of them, have any right, title or interest in said vessels. This order and all action taken pursuant thereto is in strict subordination to the rights of the United States including rights of forfeiture and salvage rights. It is the intention of this order to effect a complete substitution of the Alien Property Custodian for Claimants, and each of them, in respect of any right, title or interest they, or any of them, may have in any or all of said vessels."

Counsel for the claimants does not dispute that the vesting order of the Alien Property Custodian of July 22, 1942 has the legal effect of transferring completely to the Custodian for the benefit of the United States, the property interests of the claimants in the vessels as they then existed, with the exception, however, of the right of counsel for the claimants to be compensated for their services to their clients out of the fund realized from the use or disposition of the vessels. But vigorous opposition is made to the substitution of the Alien Property Custodian for the claimants as *dominus litis* in the cases to the extent prayed for by the Custodian. It is pointed out that while the Alien Property Custodian had the right and power to seize and take over the interests of the claimants in the vessels as they existed on July 22, 1942, the Custodian could take nothing more; and therefore the issue originally created by the libels for forfeiture of the ships still remains to be decided in this case, and the claimants have a right to contest this issue and have it decided; which they would be precluded from doing if they are now *excluded* from further participation in the case. And it is fur-

ther pointed out that it may be of practical importance hereafter to the claimants to have determined in these cases just *what were* the interests of the claimants on July 22, 1942 that the Alien Property Custodian has seized and vested in himself. While it is recognized that whatever interest the claimants then had has now passed to the United States, it may still be important to the claimants to establish that the vessels were not subject to forfeiture, and therefore the interests therein of the claimants taken over by the Alien Property Custodian constituted the full value of the ships. In this connection reference is made to other provisions of the Trading with the Enemy Act, section 9(b), 50 U.S.C.A. Appendix § 9(b), which under certain conditions authorized the President to restore to former owners property seized by the Alien Property Custodian; and in addition thereto, while Congress is under no obligation after the present war to restore the property, it may do so after this war as was done after the first World War of 1917. See The Settlement of War Claims Act of 1928, section 11, 45 Stat. 270, 50 U.S.C.A. Appendix § 9; Cummings v. Deutsche Bank, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545.

It is apparent that the Alien Property Custodian is clearly entitled to intervene and be made a party to the case, and, under present conditions, will be entitled to receive and hold for the benefit of the United States any compensation for the use of said ships that may be hereafter determined in accordance with the applicable law (subject to the claim, if any, for counsel fees); and also the ships themselves if not adjudicated forfeited to the United States, and subject also, in the case of the Pietro Campanella, to the proper claims, if any, of Dichman, Wright & Pugh, Inc. But the Alien Property Custodian is not satisfied with an order to that effect and demands not only that he be substituted for the claimants but that the order shall be so drawn that he will be *dominus litis* in the litigation, and the claimants excluded from further participation in the defense of the cases. In this connection it is importantly to be observed that *what* the Alien Property Custodian has seized and vested in himself is not the absolute title and ownership of the vessels but only the conditional ownership thereof *if* the claims of the United States to forfeiture are adjudged invalid.

From the review of the proceedings in the cases it appears that the following issues are now presented: (1) whether the ships are subject to forfeiture as alleged in the libels; (2) in the case of the Pietro Campanella, whether the vessel if forfeited to the United States is subject to the prior claim of Dichman, Wright & Pugh, Inc.; (3) whether if the vessels are not subject to forfeiture counsel for the claimants are entitled to be compensated for fees from the fund constituting compensation for the use of the ships as hereafter determined and (4) it will be noted that the court has, at least up to this time, retained formal jurisdiction over and custody of the ships by a deputy marshal.

In support of opposition to the exclusion of the claimants from further participation in the cases, their counsel first points out that the effect of the order sought by the Alien Property Custodian would be to constitute him the technical claimant of the ships in this admiralty proceeding in rem; or, in other words, that he is attempting under the authority of his vesting order to seize the claimants' *status* in the case which, it is contended, is not permissible under the applicable admiralty rules with respect to claimants. In this connection reference is made to Admiralty Rule 25, 28 U.S.C.A. following section 723, which provides: "In suits in rem the party claiming the property shall verify his claim on oath or solemn affirmation, stating that the claimant by whom or on whose behalf the claim is made is the true and bona fide owner. And where the claim is put in by an agent or consignee, he shall also make oath that he is duly authorized thereto by the owner; or, if the property be, at the time of the arrest, in the possession of the master of a ship, that he is the lawful bailee thereof for the owner. And, on putting in such claim, the claimant shall file a bond or stipulation for costs as above provided." It is plausibly argued that the Alien Property Custodian cannot properly qualify as the claimant in these cases be-

cause he had no interest in the ships at the time the claims of the Italian owners were filed and not objected to, and moreover, he does not now assert any absolute or certain rights in and to the ships but only conditional or contingent rights dependent upon the determination of the libels for forfeiture. And it is also said that the claimant in admiralty must be one who disputes the allegations of the libel which the Custodian in this case does not do. United States v. 422 Casks of Wine, 1 Pet. 547, 7 L.Ed. 257.

■ But apart from this well established doctrine of admiralty procedure there is a much more fundamental objection to substituting the Custodian as *dominus litis* to the exclusion of the present claimants. To do so would be to create a situation in which the court could not validly adjudicate questions raised by the libels as to the forfeiture of the vessels to the United States; because if the Alien Property Custodian becomes the sole party acting for the claimants in defending the forfeiture proceeding, there would be no really adverse interests on that issue. The Alien Property Custodian is an official of the United States acting in the national interests. His authority stems from the constitutional grant of power in Art. I, § 8, clause 11 to Congress "to declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water." It is under this power that Congress has authorized the President in the Trading with the Enemy Act of 1917, as amended by the first War Powers Act of December 18, 1941, § 301, 50 U.S.C.A.Appendix § 616, to appoint the Alien Property Custodian, and to confer upon him the power to act, and in this respect he represents the President of the United States. His authority to act now comes from his appointment by the President in the Executive Order No. 9095 of March 11, 1942, 50 U.S.C.A.Appendix § 6 note, as amended by Executive Order No. 9193 of July 7, 1942.[1] His statutory au-

---

[1] The applicable portions of these orders reads as follows (7 Fed.Reg. 5205, 5206):

"1. There is hereby established in the office for Emergency Management of the Executive Office of the President the Office of Alien Property Custodian at the head of which shall be an Alien Property Custodian appointed by the President.

. . .

"2. The Alien Property Custodian is authorized and empowered to take such action as he deems necessary in the national interest, including, but not limited to, the power to direct, manage, supervise, control or vest, with respect to: * * *

"(e) any ship or vessel or interest therein, in which any foreign country or national thereof has an interest; and

"(f) any property of any nature what-

thority to make the vesting order in himself flows from section 5(b) of the Trading with the Enemy Act of 1917 as amended by section 301 of the first War Powers Act of 1941, 50 U.S.C.A.Appendix § 616; and section 7(c) of the original Trading with the Enemy Act, 50 U.S.C.A.Appendix § 7(c).[2]

▉ As *dominus litis* he would have the power to consent to a decree of forfeiture without contest. The court does not assume that he would in fact so exercise his power but his counsel in argument stated that it might possibly be done hereafter if deemed proper policy. It should be obvious that the situation thus created would make a case impossible for the court to adjudicate. The plaintiff is the United States, and the defendant claimant would be an officer of the United States acting for, on behalf of and in the interest of the United States. Obviously there would be no adverse interests here involved and any adjudication made by the court between these two parties would be a nullity. A suit against the Alien Property Custodian is in effect a suit against the United States. Cummings v. Deutsche Bank, 300 U.S. 115, 118, 57 S.Ct. 359, 81 L.Ed. 545; Banco Mexicano v. Deutsche Bank, 263 U.S. 591, 603, 44 S.Ct. 209, 68 L.Ed. 465; Becker Steel Co. v. Cummings, 296 U.S. 74, 78, 56 S.Ct. 15, 80 L.Ed. 54. In this respect the situation of the Alien Property Custodian in this case is analogous to that of the Director General of Railroads as illustrated in Globe & Rutgers Fire Ins. Co. v. Hines, 2 Cir., 273 F. 774, 777, 778. It is a fundamental doctrine of judicial procedure that

no valid judicial pronouncement can be made where there are no real adverse interests. Lord v. Veazie, 8 How. 251, 12 L.Ed. 1067; Cleveland v. Chamberlain, 1 Black 419, 66 U.S. 419, 17 L.Ed. 93; Wood-Paper Co. v. Heft, 8 Wall. 333, 19 L.Ed. 379.

▉ It follows that if the order of substitution and exclusion is granted the libels for forfeiture by the United States would have to be dismissed. But such a dismissal is opposed by counsel for the United States as libelant in these cases; who, in lieu thereof, contends that, assuming the identity of interest between the libelants and the Alien Property Custodian as claimant, the proper course for the court to follow would be to dismiss the claims to the ships. This simple expedient, however, encounters the fundamental obstacle, long well established in our jurisprudence, that even where an enemy is assailed in court with respect to his person or property, he has the right to defend, even though he might not have the right to originally sue or litigate as plaintiff. McVeigh v. United States, 11 Wall. 259, 20 L.Ed. 80; Windsor v. McVeigh, 93 U.S. 274, 278, 23 L.Ed. 914; Ensminger v. Powers, 108 U.S. 292, 2 S.Ct. 643, 27 L.Ed. 732; Hovey v. Elliott, 167 U.S. 409, 414, 17 S.Ct. 841, 42 L.Ed. 215; International Ins. Co. v. Sherman, 262 U.S. 346, 351, 43 S.Ct. 574, 67 L.Ed. 1018; Watts, Watts & Co. v. Unione Austriaca di Navigazione, 248 U.S. 9, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323. In Birge-Forbes Co. v. Heye, 251 U.S. 317, 40 S.Ct. 160, 64 L.Ed. 286, the enemy as-

---

soever which is in the process of administration by any person acting under judicial supervision or which is in partition, libel, condemnation or other similar proceedings and which is payable or deliverable to, or claimed by, a designated enemy country or national thereof. * * * *"

[2] The applicable portions of these statutes are as follows:

"(1) During the time of war or during any other period of national emergency declared by the President * * * any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President, and upon such terms and conditions as the President may prescribe such interest or property shall be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States,

and such designated agency or person may perform any and all acts incident to the accomplishment or furtherance of these purposes; * * *."

7.c. "If the President shall so require any money or other property * * * and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act."

sailed in a court proceeding was permitted to defend the action even though the property involved was ultimately to be turned over to the Alien Property Custodian. See also City Nat. Bank of Selma v. Dresdner Bank of Bremen, D.C., 255 F. 225, and Huberich on Trading with the Enemy, p. 220, et seq. And this right of the enemy to defend has been expressly authorized by section 7(b) of the Trading with the Enemy Act which, after providing that nothing in the Act shall be deemed to authorize the prosecution of suits by an enemy or ally of enemy prior to the ending of the war (with certain exceptions) continues: "And provided further, That an enemy or ally of enemy may defend by counsel any suit in equity or action at law which may be brought against him."

■ This statutory permission of the enemy to defend "any suit in equity or action at law" must be construed broadly enough to include admiralty suits in rem. Ex parte Colonna, 314 U.S. 510, 62 S.Ct. 373, 86 L.Ed. 379; Wisconsin River Imp. Co. v. Pier, 137 Wis. 325, 118 N.W. 857; Riddell v. Fuhrman, 233 Mass. 69, 71, 123 N.E. 237. In a number of cases arising under the Trading with the Enemy Act it is at least implied that the alien enemy is a proper if not a necessary party, even though the property has been taken over by the Alien Property Custodian. Birge-Forbes Co. v. Heye, 251 U.S. 317, 40 S. Ct. 160, 64 L.Ed. 286; City Nat. Bank of Selma v. Dresdner Bank of Bremen, D.C., 255 F. 225; Milwaukee-Western Fuel Co. v. Industrial Comm., 172 Wis. 561, 179 N. W. 763.

■ My conclusion is that the order now applied for by the Alien Property Custodian should not be granted to the extent of excluding claimants in this case from defending the libels for forfeiture. It is presently effective, although the extent of its effect will depend upon the fate of the libels for forfeiture. The United States as libelant can, if it wishes, dismiss the libels for forfeiture, and there will then be no further obstacle to the absolute nature of the right of the Custodian to the possession of the ships and the compensation for their prior use, subject, however, to the present use of the ships by the Maritime Commission under the requisitioning order heretofore referred to, and subject also to the prior claim, if any, of the Intervenor, Dichman, Wright & Pugh, Inc., in the case of the Pietro Campanella. And with respect to the fund as hereinafter determined for the use of the ships by the Maritime Commission, there may be a question as to whether counsel for the claimants are entitled to any portion thereof for fees. No opinion is expressed on this point as the question has not been argued by counsel. The petition of the Alien Property Custodian should be granted to the extent of making him a party to this case with full right to hereafter receive and hold any interest in the ships which the claimants had at the time of the vesting order. As the United States through the Maritime Commission now has possession and use of the ships, it is not apparent that this disposition of the matter will in any way interfere with the war effort of the government.

■ With respect to the motion of the claimants for a stay of the prosecution of the libels for forfeiture, it was conceded by counsel for the government that they are entitled to such a stay during the continuance of the war (Watts, Watts & Co. v. Unione Austriaca di Navigazione, 248 U. S. 9, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323; The Kaiser Wilhelm II, 3 Cir., 246 F. 786, L.R.A.1918C, 795; City Nat. Bank of Selma v. Dresdner Bank of Bremen, D.C., 255 F. 225); if the claimants are not ousted from further defense of the case. The motion for a stay therefore will be granted at the present time but without prejudice to application hereafter by the government when deemed appropriate for further consideration of the question. While the cases just cited seem to definitely establish in principle that an alien enemy allowed to defend should be given a fair opportunity to do so, which would ordinarily not exist during the duration of the war, the facts of this particular case may possibly furnish hereafter an exception to the general rule, in that the acts relied upon for the forfeiture of the vessels all occurred in this jurisdiction and the actors were the masters and members of the crew of the vessels who presumably are still in this country.

Counsel may submit an order in accordance with this opinion in due course.